IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

BARBI LYNN HUNT,

                              Plaintiff,

        v.                                                      OPINION AND ORDER

KILOLO KIJAKAZI,[1]                                             21-cv-210-wmc
Acting Commissioner of Social Security,

                              Defendant.

        Plaintiff Barbi Lynn Hunt seeks judicial review of a final decision of defendant Kilolo

Kijakazi, Acting Commissioner of the Social Security Administration, finding Hunt was not

disabled within the meaning of the Social Security Act.  Specifically, Hunt contends that the

administrative law judge (ALJ) who decided her case erred by giving insufficient weight to the

opinions of her treating physician assistant that she had work-preclusive limitations.  Because

the ALJ's assessment of the physician assistant's opinion was well-explained and supported by

the record, the court will affirm the commissioner's decision.


                                        BACKGROUND

        Barbi Lynn Hunt applied for disability benefits in 2017, when she was 44 years old,

claiming to have been disabled since April 2, 2017, due to depression, back pain and shoulder

pain.  (AR 227–28, 272.)[2]  After the local disability agency denied her claim initially and on

---

[1] The court has changed the caption to reflect Kilolo Kijakazi's appointment as acting
commissioner.

[2] Record cites are to the administrative record, located at dkt. 13.

reconsideration, Hunt requested an administrative hearing, which was held via videoconference on October 8, 2019, before ALJ Kimberly Cromer.  (AR 36–74.)

Hunt's counsel argued at the hearing that Hunt was unable to sustain full-time work because of mental health problems, including depression, anxiety and post-traumatic stress disorder, as well as because she suffered from migraines, back pain and breathing problems. (AR 40–41.)  Hunt testified that she had difficulty concentrating, staying on a schedule, and being around other people.  (AR 46–48.)   She also took medications for insomnia and nightmares, back pain, anxiety, migraines and post-traumatic stress disorder (AR 52–54), and she met with a counselor once a week.  (AR 51.)   She was able to drive and take care of her children, but she testified that her back hurt if she drove for too long. (AR 46, 57.)

In a December 2019 decision, the ALJ found that Hunt was not disabled. (AR 14–30.) The ALJ found that Hunt had the following severe impairments:  lumbar degenerative disc disease; bilateral shoulder degenerative joint disease; asthma/chronic obstructive pulmonary disease; post-traumatic stress disorder; personality disorder; and migraines, depression and anxiety. (AR 20.)   But the ALJ found that she retained the residual functional capacity to perform a reduced range of light work.  (AR 23.)  Specifically, the ALJ found that Hunt could perform light work with physical restrictions of: working on a flat, even surface; never climbing ladders, ropes, or scaffolding; only occasionally climbing ramps or stairs; only occasionally balancing, stooping, crouching, kneeling, crawling or reaching overhead; and avoiding work that involved unprotected heights, hazardous machinery, commercial driving, loud noise, and concentrated exposure to vibration, extreme cold, heat, humidity, wetness or pulmonary irritants.  (*Id.*)  As for mental restrictions, the ALJ limited Hunt to: simple, routine tasks at a variable rate; only occasional contact with coworkers and supervisors; only occasional changes

in the work setting; no work with the general public as a part of routine job duties; no fast-paced production work such as on an assembly line or work where a machine sets the pace; no strict production or hourly requirements; and no tandem tasks.  (*Id.*)  Finally, relying on the testimony of a vocational expert, the ALJ concluded jobs existed in significant numbers in the national economy that Hunt could perform with those limitations.  (AR 29.)

## ANALYSIS

On appeal, plaintiff contends that the ALJ failed to account adequately for the opinions of Lauren Dailey, PA-C, plaintiff's treating physician assistant.  Dailey provided two medical source statements in June 2018, both opining that plaintiff could not sustain full-time work because she was moderately or markedly limited in several areas of mental and physical functioning.  (AR 389–91.)  Physician Assistant Daily treated plaintiff for her various problems for several years, and on June 4, 2018, Dailey completed a mental medical source statement, diagnosing plaintiff with severe anxiety and major recurrent severe depression.  (AR 389, 391.)

The ALJ found that Dailey's opinions were unpersuasive because they were not supported by or consistent with the overall record evidence.  (AR 25.)  Plaintiff argues that the ALJ's discussion of Dailey's opinions was too cursory.  In particular, she argues that the ALJ: failed to address whether Dailey's opinions were supported by the medical record or consistent with other medical opinions as required by the agency's regulations, 20 C.F.R. § 404.1520c(a)–(c); and instead, "cherry-picked" a few irrelevant mental status findings without adequately discussing how the evidence as a whole was inconsistent with Dailey's opinions.  (Plt.'s Br. (dkt. #23) 15.)

In considering plaintiff's arguments, the question before this court is whether the ALJ's decision is supported by substantial evidence, which means "sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Unfortunately for plaintiff, the threshold for sufficiency is not high; the substantial evidence standard requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The ALJ meets that standard by identifying the relevant evidence and building a "logical bridge" between that evidence and his ultimate determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

Although the ALJ's discussion of Dailey's opinions was brief, it meets this standard, particularly when considered in context of the ALJ's entire decision. *Zellweger v. Saul*, 984 F.3d 1251, 1252 (7th Cir. 2021) (court must read[] an ALJ's opinion holistically"). *First*, the ALJ acknowledged that Dailey had a seven-month treating relationship with plaintiff, but found: (1) her mental capacity opinions regarding plaintiff's limitations were not supported by Dailey's own treatment records (AR 26); and (2) at the time Dailey drafted her opinion, she had seen plaintiff just three times (AR 24). In addition, the ALJ noted that plaintiff's primary complaints at her first two visits had been about her mental health, while Dailey's records contained few notes regarding plaintiff's physical complaints or limitations. Indeed, the results of Dailey's physical examinations of plaintiff had been generally unremarkable, with Dailey noting that although plaintiff reported reduced grip strength and pain in her back and shoulders, she had normal strength in her arms, legs and hands, and had normal sensation, normal reflexes and normal lungs. (AR 20–21, 26 (citing AR 535–41).) Plaintiff identifies nothing in Dailey's records that would require the ALJ to include more significant physical restrictions than those incorporated into the residual functional capacity already.

4

Dailey's records included more information about plaintiff's mental health, but the ALJ reasonably concluded that the records did not show that her impairments were disabling.  For example, the ALJ noted that during plaintiff's first two visits with Dailey, she reported severe anxiety and depression, and presented with a tearful, flat affect, fluctuating moods, and a tendency to pick at her skin.  (AR 544–51.)  In response, Dailey prescribed a new medication, and plaintiff later reported that her mood had improved and that her anxiety was stable.  (AR 547.)  While plaintiff's depression and anxiety fluctuated over the next several appointments, with plaintiff often presenting as anxious and depressed, she also reported some further improvement with medication and counseling. (AR 521, 545, 547, 551.)   In addition, Dailey consistently noted that plaintiff was well-oriented, with an appropriate mood and affect, as well as that she maintained eye contact, had an adequate memory and was interactive and talkative.  (AR 535, 539, 546–47.)  Dailey further encouraged plaintiff to pursue counseling and a psychiatric evaluation (AR 542), while noting no significant exacerbations, hospitalizations or additional treatment during the relevant period.  (AR 22.)

In her opinion, the ALJ acknowledged these mixed records, but reasonably concluded that Dailey's opinion about plaintiff's mental limitations failed to account for plaintiff's consistent attendance at appointments and ability to maintain adequate attention, concentration and interactions during examinations.  Thus, the ALJ concluded that Dailey's own records did not support her opinion that plaintiff was precluded from performing light work with the significant additional restrictions provided for in the residual functional capacity.

*Second*, the ALJ noted that Dailey's opinions were not supported by or consistent with other evidence in plaintiff's medical records, including assessments by other treating providers. (AR 19, 21.)  Plaintiff's physical examinations were generally unremarkable, and her imaging

5

studies showed only mild degenerative changes.  (AR 21, 26–27 (citing 352, 361–62, 378, 415, 539).)  Treating providers noted that plaintiff's migraines were not intractable and responded well to treatment.  (AR 21, 27 (citing 352, 408, 532).)  Plaintiff's back and shoulder pain likewise was treated only with pain medication during the relevant period.  (AR 27–28.)

As for her mental health, plaintiff saw an advanced nurse prescriber in August 2018, who diagnosed adjustment disorder with mixed anxiety and depressed mood, generalized anxiety disorder, PTSD, dysthymia and compulsive skin picking, but also noted that plaintiff had unimpaired insight and judgment, normal thoughts, normal memory, normal fund of knowledge and acceptable concentration and attention.  (AR 481.)  That provider also adjusted plaintiff's medications and noted an improvement at the next month's follow-up appointment.  (AR 469–71.)  In addition, plaintiff saw a counselor weekly for several months during 2018, and although plaintiff was anxious during her sessions, the counselor noted her mental status exams were otherwise normal (AR 503), and plaintiff made "fair" or "good" progress in therapy.  (AR 468, 474, 476, 484, 488, 492.)  Indeed, at several other appointments, plaintiff appeared more restful, on task, and calm, as well as maintained good eye contact, was cooperative and appeared pleasant, despite being anxious or depressed.  (AR 22, 24, 25, 468, 474, 476, 484, 486, 488, 490, 486, 492, 496.)

*Third*, the ALJ offered other reasons for discounting Dailey's opinion.  With respect to plaintiff's physical health, the ALJ noted that state agency reviewing physicians had found plaintiff capable of nearly a full range of *medium* work.  (AR 26–28 (citing AR 88–90, 119–20).)  In fairness, the ALJ also found that plaintiff's medical records supported additional restrictions, with reduction to light work and numerous additional postural, reaching and environmental limitations.  (AR 26–28.)  With respect to plaintiff's mental health, the ALJ noted that both

6

the examining psychologist and state-agency reviewing psychologist had identified some mental health limitations, though none as severe as those assessed by Dailey, who was, notably, not a mental health professional.  The ALJ noted that during the examining psychologist's March 2018 exam, plaintiff appeared depressed and anxious, but she was able to concentrate on tasks, and the examining psychologist concluded that plaintiff's mental status exam was "largely unremarkable," other than mildly impaired abstract reasoning.  (AR 22 (citing AR 386–87).)  The state-agency reviewing psychologist assessed plaintiff as having limitations related to social demands and adaptation, (AR 25–26 (citing 115–17, 121–22)), which the ALJ both accepted and incorporated into her residual functional capacity assessment by restricting the novelty, complexity, social demands and pace of tasks that plaintiff could perform.  (AR 23.)  The ALJ's consideration of these psychologists' opinions provided substantial evidence supporting the rejection of Dailey's opinion and the resulting residual functional capacity assessment.  *See Pavlicek v. Saul*, 994 F.3d 777, 781, 783 (7th Cir. 2021) (affirming ALJ who gave great weight to reviewing medical assessments).

*Fourth*, and finally, the ALJ considered and evaluated Dailey's opinions in light of plaintiff's daily activities.  *See* 20 U.S.C. § 404.1529(a) (agency must consider all available evidence, including "how the symptoms affect your activities of daily living").  Specifically, the ALJ noted that plaintiff's daily activities increased with treatment and therapy, and that she was not as limited as Dailey's earlier opinions suggested.  For example, she found that plaintiff was able to drive, interact with her children and boyfriend, play computer games, talk to friends online, complete puzzles, attend appointments and shop on occasion.  (21–22 (citing AR 488, 484, 511, 492).)  Thus, the ALJ adequately considered and weighed Dailey's opinions with

other evidence in the record, and supported her decision with substantial evidence, while plaintiff's criticisms provide no basis for remanding this case.

## ORDER

IT IS ORDERED that the decision of defendant Kilolo Kijakazi, Acting Commissioner of Social Security, is AFFIRMED, and plaintiff Barbi Lynn Hunt's appeal is DISMISSED.  The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered September 19, 2022.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge

8